IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY A. D.,[1]           )
                         )
         Plaintiff,      )
                         )
vs.                      )       Case No. 17-cv-772-JPG-CJP
                         )
COMMISSIONER of SOCIAL SECURITY,  )
                         )
         Defendant.      )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in March 2015, alleging disability beginning on August 31, 2013. After holding an evidentiary hearing, ALJ Diana Erickson denied the application on May 1, 2017. (Tr. 14-22.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to fully and fairly develop the record because a "redacted Medical Source Statement" submitted by plaintiff's counsel after the hearing was not included in the record. This error was harmful because the opinions of two state agency consultants and of Dr. Vittal Chapa were not sufficient to support the residual functional capacity (RFC) determination.

---

[1] In keeping with the Court's recently adopted practice, the Court will not use plaintiff's full name in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

2. The ALJ failed to properly consider her RFC.

**<u>Applicable Legal Standards</u>**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[2] The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4)

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 *et seq.* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c *et seq.* and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, which details medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**The Decision of the ALJ**

ALJ Erickson followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She was insured for DIB only through December 31, 2017.[3] She found that plaintiff had severe impairments of diabetes with peripheral neuropathy, chronic obstructive pulmonary

---
[3] The date last insured is relevant only to the claim for DIB.

disease (COPD), and asthma, and that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level limited to no climbing of ladders, ropes, or scaffolds; no crawling; occasional climbing of stairs and ramps; occasional balancing, stooping, and crouching; no use of foot controls; only frequent reaching, handling, and fingering; no exposure to pulmonary irritants or extreme cold; and only occasional exposure to extreme heat, hazards, and vibration. Based on the testimony of a vocational expert, the ALJ found that plaintiff could do her past work as a hair stylist. In the alternative, she was also able to do other jobs which exist in significant numbers in the national and regional economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

   1. **Agency Forms**

Plaintiff was born in 1964 and was 49 years old on the alleged onset date of August 31, 2013. (Tr. 239.) She had worked as a hair braider in her home from 2010 to 2013. She had also worked as a CNA in a nursing home. (Tr. 259.)

   2. **Evidentiary Hearing**

Plaintiff appeared for a hearing in October 2016. Because she had just had surgery to remove a nodule from her throat, the hearing was postponed so that a consultative physical exam could be performed. (Tr. 61-72.)

The rescheduled hearing took place in January 2017. Plaintiff was represented by an

attorney, Scott Dixon. At the outset, Mr. Dixon noted that Dr. Vittal Chapa had recently examined plaintiff at the request of the agency and had concluded that plaintiff was able to lift up to fifty pounds, which was a third of her body weight. He objected to Dr. Chapa's report because his findings were not "to be taken seriously." He asked permission to submit a report from Dr. Chapa regarding his examination of a different claimant in which he found that claimant was also able to lift fifty pounds. He said he would redact the other claimant's identifying information. Mr. Dixon also wanted to submit a diary of plaintiff's blood sugars. Although she was doubtful that the other claimant's report demonstrated a pattern on Dr. Chapa's part, the ALJ gave counsel permission to submit both the redacted medical report and the blood sugar diary within seven days of the hearing. (Tr. 35-37.)

Plaintiff testified that she could not do much around the house. She could not "really get up" because her feet hurt "so bad." She could not hold anything in her hands because her hands were numb. Her daughter did all the household chores and cooking. (Tr. 53.) Her feet felt like they were "on fire the majority of the time." (Tr. 47.) Plaintiff testified that she still used inhalers every day. She spent most of the day sitting in a recliner. (Tr. 58.)

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could do plaintiff's past work as a hair braider. She could also do the jobs of office helper, routing clerk, and cashier. (Tr. 50-51.)

### 3. Medical Records

Plaintiff's primary care physician was Dr. Miguel Granger. He treated her for, among other conditions, diabetes, hypertension, and asthma. At office visits in 2014 and 2015, he

consistently described her diabetes as uncomplicated. It was treated with metformin, an oral medication. Her asthma was treated with an inhaler and a nebulizer. Physical exams consistently showed that her lungs were clear to auscultation and her respiratory effort was normal. She was advised to stop smoking. (Tr. 363-75.) In May 2015, Dr. Granger added a diagnosis of COPD, to be treated with "meds and stop smoking." (Tr. 389-99.) Dr. Granger described her diabetes as "without complications" in March and July 2016. She was still taking metformin. She was using a nebulizer three times a day as needed and an inhaler two times a day for COPD. (Tr. 493, 497.)

Plaintiff was seen by a pulmonologist in October 2016 because she had been having shortness of breath and a feeling of airway constriction following exposure to a tanker fire in front of her house. (Tr. 535-37.) She was admitted to the hospital. She was diagnosed with a polyp on the left vocal cord which was causing her noisy breathing and hoarse voice. This was excised. Her blood sugars were poorly controlled and her A1C was high at 12.5. She was started on insulin injections. Neurologic exam was negative for sensory deficit. She was to follow up with Dr. Granger or Dr. Bay. (Tr. 405-29.)

Plaintiff saw her pulmonologist on November 1, 2016. Her symptoms were much improved since the polyp had been removed. Plaintiff denied any shortness of breath. She was no longer using inhalers. She had stopped smoking. She was "[h]ere today to report how good she feels, is not taking inhalers any longer nor does she ever want to take them again." The doctor suggested that she get a pulmonary function study done, but she declined because she no longer had any symptoms of shortness of breath. (Tr. 532-34.)

Following her discharge from the hospital, plaintiff received primary care at Belleville

Family Practice. In October 2016, it was noted that her diabetes was poorly controlled, but she wanted to take oral medications instead of injecting insulin. She had started doing "bed exercises" and planned on walking to lose weight. On exam, gait was normal and neurologic exam was negative. She had no shortness of breath and no wheezing. (Tr. 519-22.) She denied shortness of breath and fatigue when she was seen again in December 2016. She was prescribed Lyrica for neuropathy. (Tr. 516-18.)

    4.       **Exams by Dr. Chapa**

Dr. Vittal Chapa examined plaintiff at the request of the agency in June 2015. The examination was essentially normal. (Tr. 392-96.)

Dr. Chapa examined plaintiff a second time on November 17, 2016, after the polyp was removed from her throat. Plaintiff told him that she had shortness of breath on exertion and that she used inhalers. She also said she had a feeling of pins and needles in her feet. On exam, he found that she was able to appreciate pinprick in both upper and lower extremities and that position sense and vibration sense were intact. Gait was normal, and she had no motor weakness or muscle atrophy. Grip strength was full and equal. Her lungs were clear with no wheezing. A pulmonary function test resulted in an $FEV_1$ score of 1.86, which was 97% of the predicted value. She did not qualify for post-bronchodilator testing. (Tr. 467-82.)

Based on his 2016 exam, Dr. Chapa opined that plaintiff could continuously lift up to twenty pounds and frequently lift up to ten pounds. She could sit for a total of eight hours, stand for a total of five hours, and walk for a total of one hour during a work day. She was limited to only frequent reaching and manipulating with both upper extremities, and should never operate foot controls. She could never climb stairs, ramps, ladder, or scaffolds, and could never balance.

(Tr. 470-75.)

5.  **State Agency Consultants' Opinions**

Two state agency consultants assessed plaintiff's RFC based on a review of the records in June and November 2015. Both concluded that she had no severe impairments. (Tr. 76-77, 94-96.)

## Analysis

Plaintiff's first argument is a complete nonstarter and borders on frivolous. First, she incorrectly assumes that the "redacted Medical Source Statement" is a statement from her own treating doctor. Doc. 17, pp. 3-4. There is no basis for this assumption. Plaintiff's attorney should know whether a medical source statement was obtained from one of her treating doctors. Further, there is no reason why a statement from plaintiff's own doctor concerning plaintiff's condition would be redacted. Most importantly, the record clearly indicates that the redacted statement is the report discussed by Mr. Dixon and the ALJ at the second hearing—a report by Dr. Chapa concerning his exam of a different social security claimant. (Tr. 35-37.)

The ALJ gave plaintiff's counsel seven days to submit the redacted report and plaintiff's blood sugar diary. On January 31, 2017, she informed him by letter that she had not received his additional evidence. (Tr. 311.) Under date of February 3, 2017, Mr. Dixon submitted the blood sugar diary but not the redacted Medical Source Statement. The blood sugar diary was made part of the record. (Tr. 547-66.) Thus, despite being on notice that the ALJ had not received the redacted statement, plaintiff's counsel chose to send another copy of the blood sugar diary but not the redacted statement. Plaintiff makes no attempt to explain how this could possibly be construed as an error on the part of the ALJ. Where a claimant is represented by an attorney, the

ALJ is entitled to assume that the claimant has presented her strongest case for benefits. *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); *Glenn v. Secretary of HHS*, 814 F.2d 387, 391 (7th Cir. 1987).

There is also no valid reason to think that the absence of the redacted statement had any effect on the ALJ's decision. Plaintiff states that the absence of the statement "changed the outcome of the case" and then argues that the opinions of the state agency reviewers and of Dr. Chapa were insufficient to support the RFC determination. Doc. 17, p. 4. Her argument here is premised on her incorrect assumption that the "redacted Medical Source Statement" is from plaintiff's doctor and concerns plaintiff. She does not suggest how a medical statement about a different claimant could have influenced the RFC assessment.

For her second point, plaintiff argues that the RFC assessment was not supported by substantial evidence because the ALJ erred in weighing the opinions of the state agency reviewers and of Dr. Chapa. Plaintiff contends that the ALJ erred in assigning any weight at all to the opinions of the two state agency reviewers who determined that she had no severe impairments. But, the ALJ obviously rejected their opinions because she found that plaintiff did have severe impairments that restricted her to less than a full range of light work.

Plaintiff argues that the ALJ erred in accepting parts of Dr. Chapa's opinion because the opinion is internally inconsistent and is entitled to no weight. Her critique of Dr. Chapa's opinion is based largely on her own unsupported medical assumptions and a misunderstanding of the pulmonary function study.

The determination of RFC is not a medical opinion but is an administrative finding that is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). The ALJ "must consider the entire

record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions. . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

According to plaintiff, Dr. Chapa's opinion was internally inconsistent because Dr. Chapa found that plaintiff could not operate foot controls but also found that she could stand for a total of five hours, and walk for a total of one hour during a work day. She contends that standing/walking would be "at least as difficult" as operating foot controls. She also sees a contradiction between the doctor's opinion that she could never balance and his opinions that she could stand and walk and could walk a block at a reasonable pace on rough or uneven surfaces. The conflict between these opinions is not apparent, however, and these are medical conclusions that plaintiff and her attorney are not qualified to draw.

Moreover, plaintiff's argument ignores the fact that the ALJ did not say that she accepted and adopted Dr. Chapa's opinion wholesale. On the contrary, ALJ Erickson disagreed with his conclusion that plaintiff could not climb ramps and was "unable to perform various postural activities at a greater level." (Tr. 19-20.) The reasons for her disagreement were the unremarkable findings on his examination and the rest of the record, including the treatment records indicating that she had significant improvement in her breathing after the polyp was removed. The ALJ gave Dr. Chapa's opinion only "some weight." Plaintiff points to nothing in the medical records to suggest that the ALJ's RFC assessment was erroneous. To the extent that she relies on her own subjective statements, the Court notes that she has not challenged the ALJ's credibility determination.

Lastly, plaintiff faults the ALJ for not determining the severity of her COPD and for not mentioning the result of the pulmonary function test. It is true that the ALJ did not specifically

mention the pulmonary function test result, but that result does not, as plaintiff apparently believes, indicate that she had a serious reduction in pulmonary function.

The type of pulmonary function testing that was administered to plaintiff is called spirometry. Spirometry measures how well the patient moves air into and out of her lungs. It involves "forced expiratory maneuvers." A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation. $FEV_1$ is the volume of air the patient exhales in the first second of the forced expiratory maneuver. If the $FEV_1$ value is less than 70% of the predicted normal value, spirometry should be repeated after administration of a bronchodilator. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00, Respiratory Disorders, paragraph 3.00E.

Here, the pulmonary function study resulted in an $FEV_1$ score of 1.86, which was 97% of the predicted normal value. In other words, the result was almost normal. The score was so high that, as stated in the report, she did not qualify for additional testing after administration of a bronchodilator.

Plaintiff hangs her argument on the description of the $FEV_1$ score as "marked." Contrary to her suggestion, Dr. Chapa did not characterize the score as "marked." Rather, the technician's report stated, "Volume Scale of 10 mm per Liter. Time base is 20 mm per second. The Marked $FEV_1$ was calculated using the 'Backward Extrapolation to Time Zero' Method." (Tr. 478.) Plaintiff cites nothing to support the idea that the word "marked" was meant to describe the severity of her COPD.

She is also incorrect in arguing that the ALJ failed to evaluate the severity of her COPD. On the contrary, the ALJ noted that the pulmonologist's office notes indicate that, after the polyp was removed, plaintiff reported significant improvement in her breathing. (Tr. 20.)

Plaintiff has not identified any errors requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413. ALJ Erickson's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Erickson committed no errors of law and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for benefits is **AFFIRMED.** The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE: June 11, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**